CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 1 2 2005
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JERRY J. NOLAN, et al., | ) | Civil Action No. 7:04CV00731 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| J.D. TERRY, et al., | ) | By: Samuel G. Wilson |
| Defendants. | ) | United States District Judge |

Plaintiffs Jerry J. Nolan, Charles D. Wright, and E.D. Wise, former employees at Botetourt Correctional Center (Botetourt), bring this 42 U.S.C. § 1983 suit against J.D. Terry, warden at Betetourt, and Tim Yates, Terry's second in command, claiming that Terry and Yates violated their First Amendment and procedural due process rights by transferring or threatening to transfer them to a different work site for complaining about prisoner discipline. Terry and Yates argue that the plaintiffs have failed to state claims for which relief can be granted and that the Rooker-Feldman doctrine and Younger abstention bar the court from reviewing the claims. The court finds that the plaintiffs have sufficiently pled First Amendment claims, but not procedural due process claims, and that neither Rooker-Feldman nor Younger precludes review.

I.

Plaintiffs Nolan, Wright, and their immediate supervisor, Wise, were all employed as guards at Botetourt. They claim that defendants Terry and Yates dismissed, ignored, or shredded many of the charges they filed against inmates for disciplinary infractions and that, in doing so, defendants diminished their authority in the eyes of prisoners, which threatened their safety. Plaintiffs claim that defendants sought to limit the number of disciplinary charges filed so that more prisoners would be eligible to participate in the prison's "therapeutic community" program, which, in turn, would garner greater federal funding for the prison. Nolan filed a grievance,

claiming that defendants' actions had emboldened the inmates and had placed himself and others in danger. Wright wrote letters to his supervisors expressing the same concerns. A hearing officer eventually found that defendants had violated state policies and had "failed to properly protect Nolan from workplace violence." Soon after, Yates ordered Nolan and Wright transferred to a different prison, and they claim that Yates' actions were retaliatory. Nolan and Wright then filed grievances claiming retaliation; the hearing officer found in their favor and ordered them returned to Botetourt. Nolan and Wright claim, however, that defendants refused to transfer them back to Botetourt and that their transfers extended their commutes to and from work, causing them financial hardship and loss of "free time." Defendants appealed the grievance decisions, and the appeal is currently pending in state court.

Wise claims that, after Nolan and Wright filed their retaliation grievances, Yates approached him and inquired as to whether Wise felt the transfers were retaliatory. Wise claims that he responded that he did and that Yates immediately informed him that he, too, would be transferred, a threat Wise claims compelled him to file for retirement. Plaintiffs claim that defendants' actions violated their rights to free speech and procedural due process.

## II.

To state a claim of First Amendment retaliation, a government employee must claim that the targeted expression related to a matter of public concern, that the alleged retaliation deprived him of some valuable benefit, that there was a causal connection between the expression and the alleged retaliation, and that the employee's interest in speech outweighs his employer's legitimate interests in curbing or discouraging such speech. Huang v. Board of Governors of University of North Carolina, 902 F.2d 1134, 1140 & n7 (4th Cir. 1990). Whether the subject of

2

the plaintiff's expression is a matter of public concern is a question for the court. Kirby v. City Of Elizabeth City, North Carolina, 388 F.3d 440, 446 (4th Cir. 2004). Further, to qualify as the deprivation of a valuable benefit, the employer's actions need only have been of sufficient magnitude to "chill" future speech. Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 356 (4th Cir. 2000) (noting that the employer action in question need not be tantamount to a termination in order to qualify as the deprivation of a valuable benefit).

Plaintiffs allege that they spoke out regarding the administration of Betetourt and the safety of its employees. Whether those topics are sufficiently rooted in public concern is a fact-dependent inquiry, requiring the court to consider the tone, context, and content of the speech. Connick v. Myers, 461 U.S. 138, 150-54 (1983). With only the pleadings before the court, these contextual matters remain unclear. Thus, viewing the allegations in the light most favorable to the plaintiffs, as the court must at this juncture, the court finds that plaintiffs' speech *potentially* touched on matters of public concern. The court further finds that plaintiffs have sufficiently pled the remaining elements of a First Amendment retaliation claim and accordingly denies defendants' motion to dismiss the claim.

### III.

To state a procedural due process claim, a government employee must claim, among other things, that his employer has deprived him of a property interest protected by the Due Process Clause. Huang, 902 F.2d 1134. The Fourth Circuit has held that a transfer without loss of rank or pay does not implicate such a property interest. Id. Nolan and Wright argue that defendants transferred them to different prisons without due process; however, they do not contend that the transfers resulted in a loss of rank or pay. Thus, they have failed to claim

3

deprivation of a protected property interest and, therefore, have failed to state a claim for which relief can be granted.

Wise also has failed to state a due process claim. He claims that defendants constructively discharged him by threatening to transfer him and thereby driving him into retirement. In order to establish constructive discharge without due process, a government employee must establish that his resignation was involuntary due to employer deceit or coercion. Stone v. University of Maryland Medical System Corp., 855 F.2d 167, 174-75 (4th Cir. 1988). In deciding whether the resignation was involuntary, the finder of fact must consider the totality of the circumstances, including the questions of "whether the employee was given some alternative to resignation . . . whether the employee understood the nature of the choice he was given . . . whether the employee was given a reasonable time in which to choose . . . and whether he was permitted to select the effective date of resignation." Id. Under these precepts, even assuming that the defendants threatened to transfer Wise, no reasonable finder of fact could conclude that Wise's decision to retire was involuntary. Wise had an alternative to quitting–he could have accepted the transfer and continued to work at the same rank and pay at a different location. Further, his allegations do not suggest that defendants' actions curtailed his ability to thoughtfully consider his options and to select his date of retirement. Accordingly, the court finds that Wise has failed to state a procedural due process claim.

### IV.

Defendants argue that both the Rooker-Feldman and Younger abstention doctrines bar the court from reviewing this case; however, the court finds that the questions presented by this case implicate neither doctrine. The Rooker-Feldman doctrine "is confined to . . . cases brought by

4

state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 125 S.Ct. 1517, 1521-22 (2005). Plaintiffs are not asking this court to review and reject, explicitly or implicitly, a state court judgment; therefore, Rooker-Feldman has no application.

Moreover, Younger abstention is only appropriate when the plaintiff files suit in a federal court seeking reversal of the outcome of a "coercive" state proceeding, such as a license revocation proceeding. See Moore v. City of Asheville, N.C., 396 F.3d 385, 395 (4th Cir. 2005). Plaintiffs do not seek reversal of any previous coercive state proceeding, so the court need not abstain under Younger.

## V.

For the reasons stated herein, the court grants in part and denies in part the defendants' motion to dismiss.

**ENTER**: This 11th day of October, 2005.

_____
UNITED STATES DISTRICT JUDGE

5